Hillsborough, }
Feb. 3, 1931. }

YVONNE GOSSELIN *v.* ALFRED LEMAY, JR.

ODILON GOSSELIN *v.* SAME.

14

*Lucier & Lucier* and *Karl E. Dowd* (*Mr. Alvin A. Lucier* orally), for the plaintiffs.

*Loewenberg & Harden* (of Massachusetts) and *Robert C. Laing* (*Mr. Loewenberg* orally), for the defendant.

BRANCH, J. The defendant argues at considerable length that the only specific ground of liability alleged in the plaintiffs' declaration is a breach of the statute (P. L., c. 103, s. 11) which requires that "the driver of any motor vehicle on any highway, approaching a crossing of ways, shall slow down and keep to the right of the intersection of the centers of both ways when turning either to the right or to the left", and that the plaintiff was not entitled to go to the jury unless there was evidence to sustain this allegation. The view which we take of the evidence renders this argument nugatory, as will subsequently appear, but having regard to some of the other questions raised by the defendant it seems necessary to state that the argument is otherwise unsound. No question in regard to the pleadings appears to have been raised in the court below, and hence, the declaration has not been made a part of the record before us. The defendant is therefore in no position to take advantage of its supposed deficiencies. Even if the assertions which he now makes were sustainable, however, they would be of no avail, for it is plain that the case was tried without objection by the defendant as though all phases of his conduct were open to examination under a general allegation of negligence. Other grounds of liability were argued and submitted to the jury and it is now too late for the defendant to raise the question whether they were specifically covered by the allegations of the declaration. Under our liberal system of procedure, the declaration, if technically inadequate, may now be amended so as to conform to the proof. P. L., c. 334, s. 9; *Grew* v. *Railroad*, 83 N. H. 383; *Lyman* v. *Brown*, 73 N. H. 411;

*Morse* v. *Whitcher*, 64 N. H. 591. Whether such an amendment is necessary or desirable in order to avoid an unseemly record is for the superior court to determine.

The defendant also argues that there was no proof of the fact that North Main street and Wayne street are public highways "and therefore any disobedience of a statute involving 'ways' was not . . . proof of negligence". No such suggestion was made in the court below. The case was tried throughout by both parties and the court upon the assumption that these streets were public highways, and at least two of the defendant's requests for instructions dealt with the reciprocal rights and duties of the parties in the use of "a public street". Under these circumstances the present contention of the defendant does not invite avid consideration here.

The defendant is not now in a position to raise this point unless it is technically presented by the denial of his motions for a nonsuit and a directed verdict. If it is so presented we need only say that plaintiffs' case did not rest entirely upon the defendant's alleged violations of the statute. The evidence of his negligence under common-law rules alone would have been sufficient to take the case to the jury if it had been established that the streets in question were private ways—as will presently appear.

There was abundant evidence of the defendant's fault. If the jury found in accordance with the testimony of the plaintiffs that they were struck while traveling upon the south cross-walk of Wayne street after passing the car track a reference to the plan would leave no room for doubt but that the defendant in turning from North Main street into Wayne street failed to keep to the right of the center of the intersection of these two ways and thus violated the provision of the statute above referred to (P. L., *c.* 103, *s.* 11). The accident happened almost under a street light and the defendant claimed that both of his head-lights were lighted. He also testified that he stopped on North Main street about 14 feet from the line of Wayne street to allow the passage of an electric car before making the turn, and that at the time of the collision he was proceeding in second speed at a rate of ten to twelve miles an hour. Under these circumstances a finding that he failed to keep a proper lookout for other travelers would be justified. There was also testimony that the defendant's car traveled a distance of 25 feet after the collision. From this evidence it might be found either that his speed was excessive or that he failed to make a prompt application of his brakes. The defendant's admission that he did not sound his horn prior to the accident

would justify a conclusion that he was at fault in this respect also. The statutory provisions governing this branch of the case will receive later consideration.

The defendant's labored argument in support of his claim that the plaintiffs were guilty of contributory negligence requires scant notice. Since the plaintiffs had crossed in safety the normal line of north bound traffic on North Main street it cannot be said as a matter of law that they were negligent because they failed to guard against the abnormal danger of being run down from behind by a car approaching from that direction. Upon this point the present case is indistinguishable in principle from the recent cases of *McCarthy* v. *Souther*, 83 N. H. 29, and *Chemikles* v. *Company*, 84 N. H. 437. It is plain that the defendant's motion for a nonsuit and a directed verdict were properly denied.

The defendant seasonably requested that the court charge the jury as follows: "XI. The failure to give a signal or sound or blow a horn in itself, does not constitute negligence." The court charged the jury as follows: "There is a statute which becomes material on the question of whether or not the defendant was negligent. It has been enacted as a duty which those who operate an automobile on our highways are bound, in the absence of a sudden emergency such as to justify ignoring it, to obey. That statute reads: 'Upon approaching any intersecting way or a curve or corner in a way, every person operating a motor vehicle shall slow down and give timely signal with his bell, horn or other device for signaling; provided, that in the thickly settled parts of a city or town no signal shall be sounded so as to make an unreasonable noise' . . .

"Again, turning to the other statute, did he give timely signal with his bell, horn or other signaling device? He admits that he did not blow his horn. Did he have reasonable opportunity to do so? He claims there was a sudden emergency, and for errors of judgment in a sudden emergency one is not held liable. When there is a sudden emergency and one of two courses is equally open, one presenting practically as good a course as the other, then by accepting the one there would be no negligence although it should later turn out that the other course would have been the better. Was there a sudden emergency here so that the defendant could not blow his horn?"

The defendant took exception to the charge as follows: "Mr. Loewenberg. We except to the instructions given the jury with reference to the defendant's failure to blow his horn or give any other

signal, because this accident took place in the vicinity of a hospital, where signals should not be given.

*The Court.* I do not understand there is any such regulation, and you have not shown any.

*Mr. Loewenberg.* We would like our exception.

*The Court.* Yes, it may be noted."

The specific exception above stated must be overruled. As indicated by the comment of the presiding justice it was not shown that the point of accident was inside the limits of any hospital zone established by public regulation within which the sounding of horns was forbidden. The only reference to this matter in the testimony is found in the re-direct examination of the defendant, as follows: "Q. This was a hospital zone? A. Yes. Q. And no horn should be sounded there? A. No horn there at all. Q. And you knew no horn should be sounded? A. Yes." This testimony was obviously inadequate to prove the existence of a valid municipal regulation established in accordance with the statute (P. L., *c.* 103, *ss.* 19-21) and superseding the general law in regard to the giving of signals. The statements of the witness were at best pure hearsay and a charge based upon the assumption that such a regulation existed would have been error.

It is not clear whether the defendant had in mind any specific application of the general statement comprising his eleventh request above quoted. The charge, however, included two such applications of the rule therein stated to the evidence then before the jury. The court plainly indicated to the jury that the defendant's failure to sound his horn might be excused in either of two situations, viz., (1), if the locality was thickly settled so that a signal might be regarded as "an unreasonable noise," or (2), if the defendant was called upon to act in "a sudden emergency." It therefore appears that the substance of the request was included in the charge and its denial in the form requested was not error. *Walker* v. *Railroad,* 71 N. H. 271.

The defendant now argues that the charge was erroneous for another reason. It is said that in the case of *Brody* v. *Gilbert,* 82 N. H. 158 this court held that the statute quoted by the trial court in the charge as above set forth (P. L., *c.* 103, *s.* 10) was not enacted for the benefit of pedestrians and that the presiding justice erred when he told the jury in effect that a violation of this statute would be a breach of duty toward the plaintiffs.

It is plain that this point was not raised either by the exception to the charge or the request above set forth, nor was it brought to the

attention of the trial court in any other way. Realizing this weakness in his position the defendant seeks to invoke the rule which was stated in *Dow v. Latham*, 80 N. H. 492, 499, that the superior court may transfer to this court "a question of law raised by neither of the parties." The validity of this rule cannot be doubted, (see P. L., c. 316, s. 13) although its application in that case was somewhat unusual. It does not aid the defendant in the present case, however, because there is nothing in the record which indicates a purpose on the part of the presiding justice to transfer any questions of law not raised in the usual way by the parties.

Nevertheless, in order to avoid any possible misconception as to the scope of the decision in *Brody v. Gilbert, supra*, we think it should be stated that the court in that case did not decide that pedestrians are outside the protection of the statute which prescribes the manner in which motor vehicles shall approach and enter an intersection of ways. It was held that the plaintiff in the *Brody* case could not complain of the defendant's failure to sound his horn at an intersection because he (Brody) was not at the intersection or approaching it at the time he was injured. The fact that he was a foot passenger had nothing to do with the decision, and we have no doubt but that the statute was designed for the protection of pedestrians as well as other travelers.

Even if the law were otherwise, the defendant could hardly complain that his rights were prejudiced by the charge which stated in effect that he was under a statutory duty to give a timely signal to pedestrians in the situation of the plaintiffs. Another section of the statute (P. L., c. 103, s. 13) provides as follows: "Upon approaching a pedestrian who is upon a traveled part of a highway, and not upon a sidewalk, such vehicle shall be slowed down and timely signal shall be given." It would seem to be a matter of indifference to the defendant whether his indubitable statutory duty to give a timely signal to pedestrians was referred by the court to section 10 or to section 13 of the motor vehicle law.

We find in the record no reason for disturbing the result of this trial, and it is therefore ordered that there be

*Judgment on the verdict.*

All concurred.